**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:06-cv-1129-RCJ-LRL |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| OSCAR CAMACHO-URANDA, | ) | |
| Defendant. | ) | |

This matter comes before the Court on an appeal from a Judgment and Conviction in a misdemeanor criminal case (Case No. 2:06-mj-0012-LRL-LRL). On May 4, 2006, United States Magistrate Judge Leavitt sentenced Defendant (Appellant) Oscar Camacho-Uranda to one year unsupervised probation upon the condition that he pay a $500 fine, pay a penalty assessment fee of $10, complete sixty-four hours of community service, attend and complete DUI school, and attend and complete a victim-impact panel. Additionally, Defendant was prohibited from visiting Lake Mead National Recreation Area for a period of six months. His sentence is stayed pending this appeal. Defendant appeals the Judgment of Conviction on the basis that Magistrate Judge Leavitt erred in denying Defendant's Motion to Suppress. The Court has considered the appeal, the pleadings on file, and oral argument on behalf of all parties. Accordingly, with good cause appearing, it is hereby ordered that the Judgment and Conviction is affirmed.

**FACTS**

On November 14, 2005, at approximately 1:53 p.m., United States Park Ranger Kenny Clarke was traveling south on Lake Shore Road at the Lake Mead National Recreation Area in his patrol vehicle. Ranger Clarke saw a Ford Expedition approaching at a speed he believed exceeded the posted 50 mile per hour speed limit. Ranger Clarke verified on his radar gun that the Expedition was traveling at 75 miles per hour. He also observed the Expedition cross the center lane.

Ranger Clarke turned around and followed the Expedition. He saw the Expedition pull into and park at the 33 Hole Overlook. The vehicle stopped and parked before Ranger Clarke arrived at the Overlook and before he turned on his overhead lights. Defendant Oscar Camacho-Uranda exited the vehicle and began walking away from the Expedition. By this time, Ranger Clarke reached the 33 Hole Overlook parking lot, and he directed Defendant to return to his vehicle. In response to Ranger Clarke's instruction, Defendant returned to the Expedition. During the course of Ranger Clarke's interaction with Defendant, other civilians were present at the 33 Hole Overlook.

Once Defendant returned to the Expedition, Ranger Clarke told him that he had been stopped for speeding. He then asked if Defendant had any drugs or firearms in the vehicle.[1] Defendant answered "no."

Ranger Clarke then asked Defendant for his driver's license, registration, and proof of insurance. Defendant handed Ranger Clarke an identification card that was not a driver's license. Ranger Clarke gave the identification card back to Defendant and again requested

---

[1] At the evidentiary hearing on the motion to suppress, Magistrate Judge Leavitt found this question was inappropriate. Transcript of Proceedings, Vol 1, May 4, 2006, Appl. Brief, Exh. D at 13-14. The appropriateness of this question is not at issue in this appeal.

his driver's license. Defendant then handed Ranger Clarke his driver's license. During this interaction with Defendant, Ranger Clarke noticed that Defendant's eyes were watery and he was slightly red in the face. Ranger Clarke also asked Defendant if he had been drinking. Defendant said "no."

With Defendant's documentation in hand, Ranger Clarke returned to his patrol car and wrote Defendant a collateral citation (ticket) for speeding. Defendant remained in his Expedition. While writing the ticket, Ranger Clarke noticed that Defendant was under the legal drinking age of 21. Ranger Clarke returned to Defendant's vehicle and handed Defendant his documentation and the speeding ticket. Ranger Clarke explained the ticket to Defendant. While doing so, Ranger Clarke noticed the faint odor of alcohol coming from Defendant's person. Ranger Clarke then decided to conduct a DUI investigation. Ranger Clarke asked Defendant again whether he had been drinking. Defendant responded, "I'm okay to drive." Because Defendant responded with neither "yes" nor "no," Ranger Clarke concluded that Defendant may have been drinking.

Ranger Clarke asked Defendant whether he could look in Defendant's vehicle before he left. Ranger Clarke suspected that he might find further evidence of driving under the influence of alcohol. Defendant responded "yes" and immediately began exiting the vehicle without any direction from Ranger Clarke to do so. Ranger Clarke asked Defendant to sit on the curb nearby while he searched the vehicle. Ranger Clarke testified at the suppression hearing that he did not use a commanding tone, did not yell, did not draw his gun, did not handcuff Defendant, and did not place Defendant in the back of the patrol vehicle.

Ranger Clarke began searching Defendant's Expedition at 2:10 p.m., 17 minutes after Ranger Clarke first saw Defendant speeding. During the search, Ranger Clarke found three unopened cans of beer under the front passenger seat. The search took approximately one

minute.

Thereafter, Ranger Clarke called a second patrol unit for backup and had Defendant perform field sobriety tests. Defendant was subsequently arrested for DUI and possession of alcohol by a minor.

A Complaint was filed against Defendant on January 9, 2006, charging him with four counts: Count One, Operating a Motor Vehicle Under the Influence of Alcohol in violation of 36 C.F.R. § 4.23(a)(1); Count Two, Operating a Motor Vehicle With a BAC of 0.10 Grams or Higher in violation of 36 C.F.R. § 4.23(a)(2); Count Three, Speeding in violation of 36 C.F.R. § 4.21(c); and Count Four, Possession of Alcohol by a Minor in violation of 36 C.F.R. § 2.35(a)(2)(ii).

On March 22, 2006, Defendant filed a Motion to Suppress Evidence for Fourth Amendment Violation. (# 4.) The motion was fully briefed, and Magistrate Judge Leavitt conducted an evidentiary hearing on the motion on May 3 - 4, 2006. (# 17.) On May 4, 2006, at the conclusion of the hearing, Magistrate Judge Leavitt denied Defendant's Motion to Suppress. (# 18.)

Defendant then decided to enter a conditional plea, reserving his right of appeal to the District Court. Defendant pled guilty to Count 1 of the Complaint for driving under the influence of alcohol. Defendant filed a timely notice of appeal.

On appeal, Defendant makes three arguments that his Fourth Amendment rights have been violated: (1) Ranger Clarke impermissibly expanded the scope and duration of the initial traffic stop; (2) Defendant's consent was not voluntary and his consent was tainted by prior illegalities; and (3) Ranger Clarke refused to allow Defendant to leave after the search of the vehicle yielded no evidence of driving under the influence of alcohol. The Government contends that: (1) the Magistrate Judge correctly concluded that Ranger Clarke had

particularized and objective factors to broaden the scope of the traffic stop into a DUI investigation, (2) the Magistrate Judge properly determined that, under the totality of the circumstances, Defendant's consent to search the vehicle was voluntary, and (3) once there were particularized and objective factors sufficient to broaden the scope of the stop, Ranger Clarke was justified in asking Defendant to perform field sobriety tests.

**DISCUSSION**

I.  **Jurisdiction**

The United States Magistrate Judge had original jurisdiction over the misdemeanor criminal case pursuant to 18 U.S.C. § 3401. The District Court has jurisdiction to review the appeal of the Magistrate Judge's ruling under 18 U.S.C. § 3402.[2] The notice of appeal was timely filed on May 11, 2006, within 10 days after the entry of judgment. *See* Fed. R. App. P. 4(b).

II. **Scope of the Traffic Stop**

    1.  **Standard of Review**

The denial of a motion to suppress is reviewed de novo. *United States v. Kemmish*, 120 F.3d 937, 939 (9th Cir. 1997). A court's determination of the existence of reasonable suspicion is reviewed de novo, and its underlying factual findings are reviewed for clear error. *United States v. Lopez-Soto*, 205 F.3d 1101, 1103 (9th Cir. 2000).

    2.  **Applicable Law**

An officer may make a traffic stop based upon reasonable suspicion that a traffic violation has been committed. *Whren v. United States*, 517 U.S. 806, 810 (1996). Once the

---

[2]  "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense is committed." 18 U.S.C. § 3402.

1  stop is made, the officer must tailor his investigation to the purposes for which the stop was
2  originally made. *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001).

3      An officer may broaden the scope of his investigation if he notices additional
4  suspicious factors that are particularized and objective. *United States v. Murillo*, 255 F.3d
5  1169, 1174 (9th Cir. 2001); *see also United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir.
6  2005) (The period of detention was permissibly extended because new grounds for suspicion
7  of criminal activity, based upon specific, articulable facts, continued to unfold.). "To justify
8  an investigative stop, a police officer must have reasonable suspicion that a suspect is
9  involved in criminal activity.  Reasonable suspicion is formed by 'specific articulable facts'
10 which, together with objective and reasonable inferences, form the basis for suspecting that
11 the particular person is engaged in criminal activity." *Lopez-Soto*, 205 F.3d at 1104-05
12 (internal citations and quotations omitted).

13     An investigative stop "must be temporary and last no longer than is necessary to
14 effectuate the purposes of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983).  Likewise,
15 "the investigative methods employed should be the least intrusive means reasonably available
16 to verify or dispel the officer's suspicion in a short period of time." *Id.*  "If the purpose
17 underlying a *Terry* stop – investigating possible criminal activity – is to be served, the police
18 must under certain circumstances be able to detain the individual for longer than the brief
19 time period involved in *Terry* . . ." *Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981).
20 When a stop is extended, there is no specific time limit to how long the detention may be
21 extended.  *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (holding that, under the
22 circumstances, a twenty-minute detention by South Carolina Highway Patrol awaiting arrival
23 of DEA agent was not too long).  "An investigative stop is not subject to strict time
24 limitations as long as the officer is pursuing the investigation in a diligent and reasonable

manner." *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076 (9th Cir. 2003) (citing *Sharpe*, 470 U.S. at 686-87) (Sixteen to twenty additional minutes to search the vehicle while defendant was handcuffed in the rear of the police car was not too long.).

The Supreme Court in *Sharpe* gave the following guidance for considering whether an investigative detention is impermissibly extended:

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court in making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*Sharpe*, 470 U.S. at 686-87 (internal citation and quotation marks omitted).

Other circuits have specifically held that the detection of an odor of alcohol during a vehicle stop is sufficient to expand the scope of an investigation. *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (Detection of an odor of alcohol on the breath of a stopped motorist was sufficient to expand the scope of the investigation); *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (Detection of an odor of alcohol from the vehicle of a stopped motorist was sufficient to expand the scope of the investigation).

**3. Analysis**

Defendant does not contest the legality of the initial traffic stop for speeding. Rather, he contends that the expansion of the investigation for DUI violates the Fourth Amendment. Defendant argues that there were no particular and objective factors for Ranger Clarke to

suspect a DUI so as to expand the scope of the traffic stop. Defendant relies heavily upon the case of *United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir. 2001), for the proposition that Ranger Clarke had no basis for conducting a "fishing expedition" by asking Defendant questions such as whether he had guns or drugs. Those questions, Defendant argues, impermissibly expanded the scope of the stop.

While Ranger Clarke's question about guns and drugs was not supported by particularized and objective factors, it also did not give rise to the request for searching the vehicle. Rather, it was Ranger Clarke's observation of the odor of alcohol later in the interaction with Defendant, along with Defendant's answer to the second question on whether he had been drinking, that gave Ranger Clarke the reasonable suspicion to continue the investigation for DUI. *Chavez-Valenzuela* is inapposite because the only factor present in that case was the defendant's nervousness, which by itself is insufficient.

Ranger Clarke's decision to broaden the scope of the traffic stop to a DUI investigation rests on particularized and objective factors relating to the possibility of Defendant being under the influence of alcohol. Specifically, Ranger Clarke detected the odor of alcohol emanating from Defendant. Additionally, Defendant's response to the second question on whether he had been drinking was "I'm okay to drive," which further aroused Ranger Clarke's suspicion that Defendant had been drinking. Already knowing that Defendant was under the age of 21, Ranger Clarke reasonably believed based on these factors that Defendant may have been under the influence of alcohol and in possession of alcohol, and evidence of these criminal activities would be found in the vehicle. The duration of the stop from the time Ranger Clarke first observed Defendant speeding until the time he asked for permission to search the vehicle was approximately 17 minutes. The record supports that Ranger Clarke's investigation was conducted in a reasonable and diligent manner. There is

no evidence to suggest that he was dilatory in his investigation.

The search of the vehicle lasted approximately one minute, during which Ranger Clarke found three unopened beer cans. Defendant argues that, if Ranger Clarke was truly conducting a DUI investigation, he should have conducted field sobriety tests before any search of the vehicle. However, there is no requirement that Ranger Clarke needed to have conducted his investigation in this order. Rather, the officer is required to "diligently pursue a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686. The one-minute search quickly confirmed Ranger Clarke's suspicions that Defendant was a minor in possession of alcohol, and indicated that further investigation was warranted. Ranger Clarke then conducted the field sobriety tests, which take longer than a minute to perform.

Ranger Clarke permissibly broadened the scope of the investigation based on his observance of particularize and objective factors, and then pursued a means of investigation in a reasonable and diligent manner. Thus, Magistrate Judge Leavitt's decision to deny the motion to suppress on this basis was proper.

**III.     Consent to the Search**

    **1.     Standard of Review**

A court's determination that consent to a search was voluntary is reviewed for clear error. *Untied States v. Perez*, 37 F.3d 510, 515 (9th Cir. 1994).

    **2.     Applicable Law**

The Government bears the burden of demonstrating that consent was voluntary. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). In evaluating whether consent to a search was voluntary, the Court must consider: (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda*

warnings were given; (4) whether the individual was told he had the right not to consent; and (5) whether the individual was told that a search warrant could be obtained. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). Such a determination must take into account the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988). None of these factors are dispositive. *Castillo*, 866 F.3d at 1082.

Other circumstances that may affect the determination of voluntariness have been articulated by the Ninth Circuit. In *United States v. Perez*, the court relied upon the following additional circumstances: The officer had returned the defendant's driver's license and registration before asking to search; the officer spoke to the defendant in a non-aggressive voice; the defendant was not under arrest or physically detained; and the defendant was detained on a public highway (a setting held to actually discourage coercion). 37 F.3d at 515. The court further noted that nothing suggested the officers exerted overt coercion, and although no *Miranda* warnings had been given, they were not necessary because the defendant was not under arrest. *Id.*

In *United States v Cannon*, the court also considered that the officer did not draw his gun, use force, or handcuff the defendant before requesting permission to search in determining that consent was voluntary. 29 F.3d 472 (9th Cir. 2001). In a Fourth Circuit opinion, the relevant circumstances as to voluntariness included that the incident occurred on a well-traveled highway, during the middle of the day, was not of inordinate duration, and only one officer was present. *United States v. Latimore*, 87 F.3d 647 (4th Cir. 1996).

    **3.    Analysis**

Defendant contends that his consent was not voluntary because he did not feel free to leave, and the consent was tainted by the prior illegality from the impermissibly extended

1  stop. Defendant argues that Ranger Clarke did not have him sign a consent form and did not
2  tell him that he had the right to refuse the search.

3  To the contrary, the consent given by defendant to search the vehicle was voluntary
4  under the totality of the circumstances. The stop was conducted in the afternoon in a public
5  park with other civilians present. Ranger Clarke was the only officer present. He testified
6  that he did not yell, did not use a commanding tone of voice, did not handcuff Defendant, and
7  did not draw his weapon. He handed Defendant all of his documentation back and explained
8  the ticket to him before he requested permission to search. Ranger Clarke asked Defendant
9  for permission to search the vehicle "before you leave," implying that Defendant was free to
10 leave. He did not say or imply that he would obtain a search warrant if Defendant refused.
11 When Defendant verbally agreed to the search, Defendant voluntarily exited his vehicle
12 without any instruction from Ranger Clarke to do so. Ranger Clarke asked Defendant to sit
13 on the curb next to vehicle rather than have him sit in the patrol car. Further, there is no
14 evidence that Defendant did not understand Ranger Clarke's question. These factors all
15 indicate that consent given was in fact voluntary.

16 Although Ranger Clarke did not tell Defendant he had the right to refuse or have him
17 sign a consent form, these considerations do not outweigh the multiple other factors
18 indicating voluntariness. Therefore, Magistrate Judge Leavitt did not err in finding that
19 consent to the search was voluntary based on the totality of the circumstances.

20 **IV.    Field Sobriety Tests**
21 **1.    Standard of Review**

22 The denial of a motion to suppress is reviewed de novo. *United States v. Kemmish*,
23 120 F.3d 937, 939 (9th Cir. 1997). A court's determination of the existence of reasonable
24 suspicion is reviewed de novo, and its underlying factual findings are reviewed for clear

1 error. *United States v. Lopez-Soto*, 205 F.3d 1101, 1103 (9th Cir. 2000).

**2.    Analysis**

Defendant argues that his Fourth Amendment rights were violated by Ranger Clarke conducting the field sobriety tests after failing to find any objective evidence during the search of Defendant driving under the influence of alcohol. Defendant argues that, because Ranger Clarke did not find any opened or empty beer cans, his suspicion of DUI should have been dispelled, and Defendant should have been allowed to leave.

As noted above, the detection of the odor of alcohol is sufficient to justify expanding the scope of the investigation. Upon searching the vehicle, Ranger Clarke's discovery of three unopened beer cans strengthened his suspicion that Defendant had been drinking and confirmed that he was a minor in possession of alcohol. Common knowledge suggests that beer is normally sold in quantities of six, twelve or more cans, and the possession of three unopened cans supports the suspicion that he disposed of the other cans by drinking them. Accordingly, Ranger Clarke's decision to pursue the investigation further to the logical next step of conducting field sobriety tests is reasonable and justifiable. Ranger Clarke had a duty to fully investigate the DUI, which had a minor impact on the length of time of the overall investigation. Thus, Magistrate Judge Leavitt's decision to deny the motion to suppress was proper.

**CONCLUSION**

IT IS HEREBY ORDERED that the judgment of conviction against Defendant for operating a motor vehicle under the influence of alcohol is AFFIRMED. The magistrate judge properly denied Defendant's motion to suppress.

DATED: May 9 , 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE